John P. Aldrich, Esq. (SBN #6877)
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
Telephone: (702) 853-5490
Facsimile:  (702) 227-1975
*jaldrich@johnaldrichlawfirm.com*

Nicholas I. Porritt, Esq. *(pro hac to be submitted)*
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, DC 20001
Telephone: (202) 524-4290
Facsimile:  (202) 333-2121
*nporritt@zlk.com*

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL MCFARLAND, derivatively on behalf  PAYMENT DATA SYSTEMS, INC. and individually on behalf of himself and all other similarly situated shareholders of PAYMENT DATA SYSTEMS, INC., | CASE NO. |
| Plaintiff, | <u>**VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT**</u> |
| vs. | **CIVIL ACTION** |
| MICHAEL R. LONG, LOUIS A. HOCH, LARRY MORRISON, KENNETH KELLER, andPETER G. KIRBY, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| -and- | |
| PAYMENT DATA SYSTEMS, INC., a Nevada Corporation, | |
| Nominal Defendant. | |

1

Plaintiff Michael McFarland ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by his attorneys, except as to those allegations that pertain to the Plaintiff, which are alleged upon knowledge, as follows:

1.     Plaintiff asserts this action for breach of fiduciary duties derivatively on behalf of Payment Data Systems, Inc. ("Payment Data" or the "Company") against the Company's Board of Directors (the "Board") and certain executive officers in connection with the excessive and unfair compensation that the Defendants self-interestedly granted themselves during 2013 and 2014. Plaintiff also asserts, on behalf of himself and the other public minority shareholders of Payment Data, a direct claim against the Defendants for breaching their fiduciary duties in connection with their improper misappropriation of substantial voting power from the Company's minority public shareholders.

2.     Between 2004 and April 2015, the Company's executive officers and directors consisted of just five individuals: (1) Michael R. Long ("Long"), who has served as the Company's Chief Executive Officer and Chairman of the Board since co-founding the Company in 1998; (2) Louis A. Hoch ("Hoch"), who has served as the Company's President, Chief Operating Officer, and a director since co-founding Payment Data in 1998, and has also served as Vice Chairman of the Board since 2007; (3) Larry Morrison ("Morrison"), who has served as the Company's Senior Vice President, Sales and Marketing Officer since July 2003; (4) Kenneth Keller ("Keller"), who has served as the Company's Senior Vice President and Chief Technology Officer since 2007; and (5) Peter G. Kirby ("Kirby"), who has served on the Board since 2001, and was the Company's lone "independent" non-employee director responsible for overseeing management (Long, Hoch, Morrison and Keller are collectively referred to herein as

the "Officer Defendants," and these individuals along with Kirby are collectively referred to as the "Defendants").

3.     Though Kirby originally set the compensation of the Company's executive officers, by 2008 Kirby relinquished his fiduciary duties altogether and allowed the Officer Defendants to establish their own compensation. As described in detail below, with no one minding the store the Officer Defendants abused their discretion and granted themselves excessive compensation during 2013 and 2014.

4.     In its 17-year existence, the Company has accumulated net losses of over $50 million. In 2013 the Company had gross profits of just $974,896, while the Officer Defendants received salaries and cash bonuses of $724,200 in the aggregate. In other words, during 2013 the Officer Defendants literally transferred to themselves a staggering 74.28% of the Company's gross profits for the year. In large part due to the compensation payments, the Company suffered a net loss of $789,039 during 2013.

5.     In 2014 Payment Data had gross profits of $4.18 million, while the Officer Defendants granted themselves compensation valued at $4.53 million in the aggregate. Thus, during 2014 the Officer Defendants transferred to themselves the economic equivalent of the Company's *entire gross profit* for the year *and then some*.

6.     The Company has been damaged as a result of the excessive compensation, and accordingly Plaintiff seeks to recover on behalf of the Company damages resulting from Defendants' unfair self-dealing.

7.     Defendants' decision to pay themselves excessive compensation had more than merely economic consequences. A substantial part of Defendants' 2014 compensation consisted of 22 million shares of Payment Data common stock — valued at $3.74 million, an improper and

excessive amount. At the same time, Defendants' decision to the grant themselves 22 million shares increased their collective corporate voting power from 42.97% to 49.97%, effectively giving them voting *control* over the Company.

8.     In determining their own compensation in 2014 Defendants wrongfully misappropriated economic value and voting power from the Company's minority shareholders, thus harming them uniquely, individually, and in direct proportion to Defendants' benefit.

9.     As a result, Plaintiff brings a direct claim on behalf of the minority public shareholders to recover damages resulting from the improper stock grant.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of Wisconsin and no defendant is a citizen of Wisconsin.  This Court has supplemental jurisdiction over Plaintiff's class claim because that claim is sufficiently related to Plaintiff's derivative claims, over which this Court has original jurisdiction, such that it forms part of the same case or controversy under Article III of the United States Constitution in accordance with 28 U.S.C. § 1367(a).

11.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

12.     Venue is proper in this district because nominal defendant Payment Data is incorporated in this district.

## THE PARTIES

13.     Plaintiff Michael McFarland is a shareholder of Payment Data and has been continuously since 2002. Plaintiff is a citizen of Wisconsin.

14.     Nominal party Payment Data is a Nevada corporation with its principal place of business at 12500 San Pedro, Suite 120, San Antonio, Texas. Payment Data is in the business of processing electronic payments for other companies.

15.     Defendant Michael R. Long has served as Chief Executive Officer and Chairman of the Board since co-founding the Company in 1998. Long also served as Chief Financial Officer of the Company from September 2003 to March 2015. Long is a citizen of Texas.

16.     Defendant Louis A. Hoch has served as the Company's President, Chief Operating Officer, and a director since co-founding the Company in 1998, and has also served as Vice Chairman of the Board since 2007. Hoch is a citizen of Texas.

17.     Defendant Larry Morrison has served as the Company's Senior Vice President, Sales and Marketing Officer since July 2003. Morrison is a citizen of Texas.

18.     Defendant Kenneth Keller has served as the Company's Senior Vice President and Chief Technology Officer since 2007. Keller is a citizen of Texas.

19.     Defendant Peter G. Kirby has served on the Board since 2001. Kirby is a citizen of Texas.

**FURTHER SUBSTANTIVE ALLEGATIONS**

20.     Payment Data generates revenues by charging fees for the electronic processing of payment transactions.

21.     Payment Data is a small company with revenues of just $25.92 million in the aggregate during the past three years (2012-2014).The Company's common stock is quoted on the OTC Bulletin Board under the ticker symbol "PYDS." As of June 26, 2015, Payment Data had a market capitalization of approximately $51 million.

22.     Since co-founding the Company in 1998, Long has served as Chief Executive Officer and Hoch has served as President and Chief Operating Officer. Long also served as Chief Financial Officer from September 2003 until March 2015.

23.     From 2003 until March 2015, only two other executive officers, Morrison, and Keller, have been employed by the Company. Morrison has served as the Company's Senior Vice President and Marketing Officer since July 2003, and Keller has served as the Company's Senior Vice President and Chief Technology Officer since 2007.

24.     During the initial years of its existence, Payment Data had a functioning Board to oversee management.  Between 1999 and 2003, the Company had a Board consisting of between five to seven members, including Long (who served as Chairman of the Board) and Hoch. During this time, the Board had an independent Audit Committee and an independent Compensation Committee, both of which were comprised of at least two and as many as four members.

25.     Following the resignation of four directors between 2002 and 2003, by 2004 the Board consisted of just three individuals: (1) Long (the Chairman), (2) Hoch (who became Vice Chairman in 2007), and (3) Kirby.

26.     Between 2004 and April 2015, not a single new person was appointed to the Board. Indeed, the Board did not (and still does not) have a formal Nominating Committee responsible for identifying and recommending suitable candidates to the Board.

27.     Accordingly, for more than a decade, the Board comprised two members of management (Long and Hoch) and just one purportedly "independent" director (Kirby).

28.     With Kirby the lone "independent" director on the Board responsible for overseeing management, and management themselves constituting a majority of the Board, there was effectively no oversight.

29.     Between 2004 and April 2015, Kirby served as the lone member of the Board's Audit Committee. In its public filings, Payment Data acknowledges that Kirby does not meet the criteria to constitute an "audit committee financial expert" as defined under the SEC's rules.

30.     Likewise, between 2004 and 2007, Kirby served as the lone member of the Board's Compensation Committee, which as described in the Company's annual proxy statements during that period, had "authority to set all forms of compensation of the Company's executive officers."

31.     The Board did away with the fig leaf of the Compensation Committee altogether sometime in 2007 or 2008. After 2007, the Company's public filings no longer mention the existence of a Compensation Committee.

32.     Instead, beginning in 2007 Kirby simply allowed the executive officers themselves to decide how they would be paid. And the looting began.

33.     On February 27, 2007, Long entered into an employment agreement with the Company which, among other things, provided for an annual salary, bonus payments, and stock awards, through December 31, 2011. *Hoch* signed the employment agreement on behalf of the Company. That same day, Hoch himself entered into an employment agreement with the Company which, among other things, provided for an annual salary, bonus payments, and stock awards through December 31, 2011. *Long* signed the employment agreement on behalf of the Company.

34.     Thereafter, on November 12, 2009, April 12, 2010, January 14, 2011, and July 2, 2012, each of Long and Hoch entered into various amendments of their respective employment agreements with the Company. The amendments to Long's employment agreement were signed by Hoch on behalf of the Company, and the amendments to Hoch's employment agreement were signed by Long on behalf of the Company.

35.     With Kirby missing in action, between 2007 and 2012 Long, Hoch, Keller, and Morrison raided the Company's coffers by paying themselves excessive salaries and cash bonuses, *i.e.*, precisely what the "market" will bear when individuals determine the value of their own services and the "buyer" is captive.

36.     Specifically, as reflected in the following chart, between 2007 and 2012, Payment Data made gross profits of approximately $7.4 million, while the Officer Defendants literally took for themselves in excess of $3.14 million in the form of self-determined salaries and cash bonus payments, a staggering 42.45% of the Company's gross profits (which does not even include certain compensation paid to Keller and Morrison that was not disclosed in Payment Data's public filings):

|  | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | Total |
|---|---|---|---|---|---|---|---|
| Revenues | $3,036,554 | $3,001,487 | $3,218,674 | $2,618,864 | $4,813,257 | $7,345,974 | **$24,034,810** |
| Cost of Services | $2,481,126 | $2,422,364 | $2,429,629 | $2,019,602 | $3,093,891 | $4,186,963 | **$16,633,575** |
| **Gross Profit** | **$555,428** | **$579,123** | **$789,045** | **$599,262** | **$1,719,366** | **$3,159,011** | ***$7,401,235*** |

| **Salary Plus Cash Bonuses** | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | Total |
|---|---|---|---|---|---|---|---|
| Long | $205,000 | $300,000 | $190,000 | $24,000 | $240,000 | $291,699 | **$1,250,699** |
| Hoch | $190,000 | $275,000 | $175,000 | $24,000 | $240,000 | $273,692 | **$1,177,692** |
| Keller | $89,421 | $104,200 | $104,200 | $104,200 | * | * | **$402,021** |
| Morrison | $100,000 | * | * | $24,000 | $65,500 | $122,000 | **$311,500** |
| **Total** | **$584,421** | **$679,200** | **$469,200** | **$176,200** | **$545,500** | **$687,391** | ***$3,141,912*** |

*= The Company has not disclosed Keller's compensation for 2011 and 2012 and Morrison's compensation for 2008 and 2009.

37.     But, unfortunately, Defendants were not done.

38.     In addition to the foregoing salaries and cash bonuses, the Officer Defendants also granted themselves tens of millions of shares of Payment Data common stock.

39.     Specifically, as disclosed in the Company's public filings, between 2007 and 2012 the following stock awards were made to the Officer Defendants as additional "compensation" for their services:

- On February 27, 2007, Long and Hoch were each granted 500,000 shares of common stock and 2,500,000 shares of restricted common stock;

- On November 1, 2007, Long and Hoch were each granted 3,085,715 shares of common stock;

- On January 9, 2008, Long and Hoch were each granted 7,750,000 shares of restricted stock and Keller was granted 500,000 shares of common stock and 1,550,000 shares of restricted stock;

- On November 12, 2008, Long and Hoch were each granted 6,171,429 shares of common stock;

- On November 1, 2009, Long and Hoch were each granted 7,200,000 shares of common stock;

- On November 4, 2010, Long and Hoch were each granted 5,400,000 shares of restricted common stock;

- On October 4, 2012, Long and Hoch were each granted 1,000,000 shares of restricted stock, Keller was granted 500,000 shares of restricted stock, and Morrison was granted 450,000 shares of restricted stock.

40.     As stated in the Company's public filings, many of the above-mentioned stock awards to Long and Hoch were awarded as annual bonuses pursuant to the terms of their respective employment agreements. As described above, though, the employment agreements themselves were anything but the product of good faith arm's-length negotiations.

41.     As a result of the above-described stock awards (as well as additional stock awards made between 2003 and 2006), Defendants drove the gravy train into majority voting control of the Company.

42.     As of June 13, 2003, the Officer Defendants collectively owned just 8.9% of Payment Data's outstanding common stock.

| Stock Ownership As of 6/13/2003 | # Shares Owned | % of Shares Outstanding |
|---|---|---|
| Long | 900,002 | 4.34% |
| Hoch | 936,638 | 4.52% |
| Morrison | 0 | 0.00% |
| Keller | 0 | 0.00% |
| Total | **1,836,640** | **8.86%** |

\* Data taken from Payment Data's Schedule 14A Proxy Statement filed with the SEC on June19, 2003. Morrison and Keller had yet to be employed by the Company.

43.     But by December 31, 2012, the Officer Defendants collectively owned 54.13% of Payment Data's outstanding common stock.

| Stock Ownership As of 12/31/2012 | # Shares Owned | % of Shares Outstanding |
|---|---|---|
| Long | 34,728,628 | 24.33% |
| Hoch | 36,503,975 | 25.58% |
| Morrison | 2,410,695 | 1.69% |
| Keller | 3,612,490 | 2.53% |
| Total | **77,255,788** | **54.13%** |

\* Data for Long, Hoch, and Morrison taken from the Company's Form 10-K Annual Report filed with the SEC on April 1, 2013. Data for Keller calculated from Keller's Form 4 filings. Based on 142,725,833 shares of Payment Data common stock outstanding as of December 31, 2012.

44.     With over 50% voting control, the Officer Defendants had the power to approve any action that would otherwise require approval of a majority of the Company's shareholders.

45.     In the next two years Defendants' compensation practices went from bad to worse.

46.     In 2013, the Company had gross profits of $974,896. And during 2013, Long, Hoch, Morrison, and Keller received salaries and cash bonuses of $724,200 in the aggregate.

|                          | 2013        |
|--------------------------|-------------|
| Revenues                 | $5,180,362  |
| Cost of Services         | $4,205,466  |
| **Gross Profit**         | **$974,896**|
|                          |             |
| **Salary Plus Cash Bonuses** | **2013** |
| Long                     | $275,000    |
| Hoch                     | $235,000    |
| Keller                   | $104,200    |
| Morrison                 | $110,000    |
| **Total**                | **$724,200**|

47.     In other words, during 2013 the Officer Defendants literally transferred to themselves a staggering 74.28% of the Company's gross profits for the year. In large part due to the compensation payments, the Company suffered a net loss of $789,039 during 2013.

48.     Meanwhile, during 2013 and 2014 the collective voting power of the Officer Defendants fell well below 50%, falling to under 43% by late 2014. The reason for this was threefold.

49.     First, since 2002 Long and Hoch owed the Company $535,302 and $449,371 respectively in connection with the Company's loss on margin loans guaranteed by the Company for Long and Hoch. On March 11, 2013, Long and Hoch paid 2,969,459 and 2,606,051 shares respectively to the Company to satisfy these debts.

50.     Second, as disclosed in Form 4s filed by Hoch with the SEC, during 2013 and 2014 Hoch sold an aggregate of more than 2.2 million shares of Payment Data common stock.

51.     And third, on December 22, 2014, the Company entered into an Asset Purchase Agreement with Akimbo Financial, Inc. ("Akimbo"), a company in the business of prepaid card

program management, pursuant to which the Company agreed to purchase substantially all of the assets of Akimbo for $3 million, the value of which would be paid in Payment Data common stock. As a result, prior to the end of 2014, the Company issued 13,456,940 shares of restricted stock to the owners of Akimbo.

52.     It did not take long for the Officer Defendants to replenish their lost voting power.

53.     On December 30, 2014, Long, Hoch, Morrison, Keller, and Kirby each filed a Form 4 with the SEC. The Form 4s indicated that on December 29, 2014 the Defendants received 22,500,000 shares of Payment Data common stock in the aggregate with Long and Hoch each receiving 8,000,000 shares, Morrison and Keller each receiving 3,000,000 shares, and Kirby receiving 500,000 shares (the "December 2014 Stock Grant").

54.     Using the $0.17 closing price of the Company's stock price on the OTC Bulletin Board on December 29, 1014, the 22 million shares received by the Officer Defendants had an aggregate value of $3.74 million.

55.     The $3.74 million in equity compensation granted to the Officer Defendants during 2014 is exorbitant.

56.     During 2014, the Company had gross profits of *$4.18 million*. Meanwhile, during 2014, Long, Hoch, Morrison, and Keller received salaries and cash bonuses of $794,700 in the aggregate. The salary and cash bonuses received by the Officer Defendants during 2014 combined with the $3.74 million in equity compensation equals *$4.53 million* in compensation.

57.     In other words, during 2014 Long, Hoch, Morrison, and Keller transferred to themselves the economic equivalent of the Company's *entire* gross profit for the year *and then some*.

58.     By the end of 2014 the Company had over $50 million in losses in its history, making the decision by the Officer Defendants even more egregious.

59.     Remarkably, the compensation awarded to Long and Hoch during 2014 went above and beyond what was due to them under their self-negotiated lavish employment agreements. For 2014, Long and Hoch's employment agreements, as amended, called for compensation payments to them valued at $591,000 and $566,000, respectively (consisting of annual salaries of $375,000 and $350,000, respectively, and bonuses valued at $216,000 each). Using the $0.17 closing price of the Company's common stock on December 29, 2014, Long and Hoch each received stock valued at $1.36 million as part of the December 2014 Stock Grant. Adding the salaries and bonuses they received for 2014, Long and Hoch each received total compensation for 2014 valued at $1,640,000.

60.     Moreover, by early 2010 the Company's only shareholder-approved compensation plan had already expired. Accordingly, the shares underlying the December 2014 Stock Grant were made outside the guise of a shareholder-approved plan.

61.     Because the December 2014 Stock Grant is indefensible, Defendants attempted to hide it.

62.     On June 5, 2015, Payment Data filed a Schedule 14A Proxy Statement with the SEC (the "2015 Proxy") with the SEC in connection with its 2015 Annual Meeting of Shareholders. The 2015 Proxy included a Summary Compensation Table which purportedly set forth "all compensation paid or earned by" the Company's executive officers during 2014.Nowhere in the Summary Compensation Table, or the accompanying footnotes or narrative is there any mention of the December 2014 Stock Grant. Indeed, in past years the Company disclosed the value of stock awards that were granted in the prior year in the "Bonus" column of

the Summary Compensation Table with a discussion of the award in the footnotes to the table. The 2015 Proxy contains no such disclosure of the December 2014 Stock Grant.

63.    In only one instance in the entire 2015 Proxy is there any sign that these awards were made. The 2015 Proxy includes an "Outstanding Equity Awards at Fiscal-Year End" table, which displays unvested stock awards held by each of Long, Hoch, Morrison, and Keller, including awards made as far back as December 2005. Each insider has an entry devoted to the December 2014 Stock Grant, simply noting the date of grant (December 29, 2014) and the number of shares received. Indeed, in footnote 2 to the table, the terms of each award included in the table are explained, except for the December 2014 Stock Grant which has no discussion or explanation.

64.    The Officer Defendants' actions in granting themselves excessive compensation during 2013 and 2014 harmed the Company and constitute a breach of their fiduciary duties.

65.    Kirby was the lone "independent" director on the Board responsible for overseeing the Officer Defendants. Kirby breached his fiduciary duties by failing to implement any controls whatsoever — let alone adequate internal controls — that would have ensured that the amount and form of executive compensation was awarded by independent and disinterested persons.

66.    With respect to the December 2014 Stock Grant, not only did Kirby not take any measures to prevent the unfair grant, but Kirby was complicit in the wrongdoing. Specifically, on December 29, 2014, the same date that Long, Hoch, Morrison, and Keller received the 22 million shares, Kirby was also granted 500,000 shares of Payment Data common stock.

67.     The 2015 Proxy conveniently describes the grant of 500,000 shares to Kirby as compensation for his service on the Board. But notably, it was the first time *since 2008* that Kirby had been granted an equity award for his service on the Board.

68.     The timing was no coincidence. Since everyone else had their hand in the till, Kirby joined in as well.

69.     Additionally, the December 2014 Stock Grant also directly harmed the Company's minority public shareholders.

70.     Specifically, the December 2014 Stock Grant resulted in a transfer of substantial voting power from the Company's minority public shareholders to the Defendants, who effectively control the Company.

71.     As disclosed in the 2015 Proxy, there were 183,539,547 shares of Payment Data common stock outstanding as of May 8, 2015. As of that same date, the Defendants collectively owned 91,705,865 shares of Payment Data common stock (see column A in chart below), representing 49.97% of the voting power of the Company (column B). Taking away the 22.5 million shares granted to the Defendants as part of the December 2014 Stock Grant (column C), the Defendants would have owned 42.97% of the Company's voting power (column D).

|          | (A)        | (B)    | (C)        | (D)    |
|----------|-----------|--------|-----------|--------|
| Long     | 39,759,169 | 21.66% | 31,759,169 | 19.72% |
| Hoch     | 38,390,111 | 20.92% | 30,390,111 | 18.87% |
| Morrison | 5,410,695  | 2.95%  | 2,410,695  | 1.50%  |
| Keller   | 6,445,390  | 3.51%  | 3,445,390  | 2.14%  |
| Kirby    | 1,700,500  | 0.93%  | 1,200,500  | 0.75%  |
| **Total** | **91,705,865** | **49.97%** | **69,205,865** | **42.97%** |

72.     In other words, as a result of the December 2014 Stock Grant, the collective voting power of the Defendants increased *by approximately 7%*, from 42.97% to 49.97%.

73.     Accordingly, the harm resulting from the exorbitant December 2014 Stock Grant was not confined to an equal dilution of the economic value and voting power of each of the Company's outstanding shares. A separate, direct harm also resulted: Defendants extracted in a zero-sum fashion economic value and voting power from Payment Data's minority shareholders. As a consequence, the minority shareholders have been harmed, uniquely and individually, to the same extent that the controlling shareholder Defendants have correspondingly benefited.

74.     As a result, Plaintiff brings a direct claim on behalf of the minority public shareholders to recover damages resulting from the December 2014 Stock Grant.

## DEMAND FUTILITY ALLEGATIONS

75.     Plaintiff brings Counts I and III derivatively on behalf of Payment Data to redress injuries suffered, and to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

76.     Plaintiff has owned Payment Data stock continuously during the time of the wrongful course of conduct and continues to hold Payment Data stock.

77.     Plaintiff will adequately and fairly represent the interests of Payment Data in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

78.     At the time of filing the Board consists of the following five directors: Defendants Long, Hoch, Kirby, and non-Defendants Miguel A. Chapa and Kirk E. Taylor (both of whom were added to the Board in April 2015 after all of the wrongdoing alleged herein occurred).

79.     Plaintiff did not make a demand on the Board prior to instituting this Action. A pre-suit demand upon the Board is futile.

80.     Long and Hoch each received compensation that is being challenged in this lawsuit. They have a strong financial incentive to not authorize any corrective action that would force them to disgorge the improper compensation they granted themselves. Accordingly, Long and Hoch are interested in this Action and thus would not be able impartially to consider a demand.

81.     Defendant Kirby was the lone "independent" director responsible for overseeing management. Yet Kirby did nothing to prevent Long, Hoch, Morrison, and Keller from granting themselves excessive compensation and substantial voting power. Kirby failed to implement any internal controls whatsoever — let alone adequate internal controls — that would ensure that executive compensation was awarded by independent and disinterested persons. To the contrary, Kirby allowed the executive officers themselves to determine their own compensation. Moreover, Kirby was complicit in their wrongdoing, taking part in the same December 2014 Stock Grant that harmed the Company and its minority shareholders. Accordingly, Kirby would (a) never sue Long, Hoch, Keller, and Morrison to recover the excess compensation, and (b) faces a substantial likelihood of liability for allowing and participating in the wrongdoing.

82.     Demand is thus futile as to Long, Hoch, and Kirby — a majority of the current 5-person Board — and accordingly Plaintiff is excused from making a demand on the Board.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings Count II as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of Payment Data common shareholders that owned stock on December 29, 2014 (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

84.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 8, 2015, over 183 million shares of Payment Data common stock were outstanding. All members of the Class may be identified from records maintained by Payment Data or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

85.     Questions of law and fact are common to the Class, including, *inter alia*, whether the compensation paid to Defendants was unfair, whether the compensation improperly transferred voting control from the Company's minority shareholders to Defendants, and whether Defendants breached their fiduciary duties to the members of the Class.

86.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

87.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

88.     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

89.     Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
### Breach of Fiduciary Duty
### (Derivative Claim against All Defendants)

90.     Plaintiff repeats each and every allegation contained above as if fully set forth herein.

91.     As officers and directors of the Company, each of the Defendants owed the Company and its shareholders fiduciary duties.

92.     The Defendants (other than Kirby) breached their fiduciary duty of loyalty by granting themselves compensation during 2013 and 2014 in amounts that were excessive and unfair to the Company.

93.     Kirby breached his fiduciary duties to the Company by failing to implement any controls whatsoever — let alone adequate internal controls — that would have ensured that the amount and form of executive compensation was awarded by independent and disinterested persons. To the contrary, Kirby allowed the executive officers themselves to determine their own compensation, which resulted in the transfer of excessive compensation to the Officer Defendants.

94.     As a result of the Defendants' actions, the Company has been and will be damaged.

95.     Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Breach of Fiduciary Duty
### (Direct Claim against All Defendants)

96.     Plaintiff repeats each and every allegation contained above as if fully set forth herein.

97.     The Defendants breached their fiduciary duties to the Company's minority public shareholders by granting themselves the December 2014 Stock Award.

98.     The issuance of the 22.5 million shares of Payment Data common stock underlying the December 2014 Stock Award resulted in an improper transfer of economic value and voting power from the Company's minority public shareholders to Defendants, who effectively control the Company. As a result of such wrongdoing, the economic value and voting power of the Company's controlling shareholder increased while that of the Company's public minority shareholders correspondingly decreased.

99.     Defendants' actions, in stripping away economic value and voting power from the Company's minority public shareholders, were designed to advance their own interests to the detriment and expense of the Company's minority public shareholders, and constitute a breach of their fiduciary duties.

100.    As a result of the misconduct described above, the Defendants have caused loss and damages to Plaintiff and the Company's minority shareholders for which Plaintiff seeks appropriate judicial relief.

**<u>COUNT III</u>**
**Unjust Enrichment**
**(Derivative Claim against Long, Hoch, Morrison, and Keller)**

101.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

102.    Defendants Long, Hoch, Morrison, and Keller were unjustly enriched by the receipt of excessive compensation, and it would be unconscionable to allow them to retain the benefits thereof.

103.   To remedy the unjust enrichment of Long, Hoch, Morrison, and Keller, the Court should order them to disgorge the excess compensation.

104.   Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of an order as follows:

A.   Disgorging the excessive compensation (both cash and stock payments) granted to Defendants during 2013 and 2014;

B.   Awarding damages against all Defendants in favor of the Company as a result of Defendants' breaches of fiduciary duties, plus pre-judgment and post-judgment interest;

C.   As to Count II, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

D.   As to Count II, awarding damages against Defendants in favor of the Company's minority public shareholders as a result of Defendants' breaches of fiduciary duties, plus pre-judgment and post-judgment interest;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

F.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated this 20th day of April, 2016.

**ALDRICH LAW FIRM, LTD.**

/s/ John P. Aldrich_____
John P. Aldrich, Esq. (SBN #6877)
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
Telephone: (702) 853-5490
Facsimile:  (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Nicholas I. Porritt, Esq. *(pro hac to be submitted)*
**LEVI & KORSINSKY LLP**
1101 30th Street, NW
Suite 115
Washington, DC 20007
Tel: 202-524-4293
Fax: 202-333-2121
nporritt@zlk.com

***Attorneys for Plaintiff***

## <u>VERIFICATION</u>

I, Michael McFarland, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing compliant, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: April 22nd, 2016

Michael McFarland