1  J. BRUCE ALVERSON, ESQ.
   Nevada Bar No. 1339
2  KARIE N. WILSON, ESQ.
   Nevada Bar No. 7957
3  **ALVERSON TAYLOR**
   **MORTENSEN & SANDERS**
4  7401 W. Charleston Boulevard
   Las Vegas, Nevada 89117
5  Telephone:   (702) 384-7000
   Facsimile:   (702) 385-7000
6
   Attorneys for Defendants
7

8              UNITED STATES DISTRICT COURT

9                  DISTRICT OF NEVADA

10

11

12 | MICHAEL MCFARLAND, derivatively | Case No.: 2:16-cv-00930-RFB-GWF
   | on behalf of Payment Data Systems, |
   | Inc., | **DEFENDANTS' MOTION TO**
13 | | **DISMISS PLAINTIFF'S AMENDED**
   | | **COMPLAINT AND**
14 |            Plaintiff, | **MEMORANDUM OF LAW IN**
   | | **SUPPORT**
15 |        v. |

16 | MICHAEL R. LONG et al., |
   | | Date:
17 |            Defendants, and | Time:
   | | Ctrm:    Hon. Richard F. Boulware, II
18 | PAYMENT DATA SYSTEMS, INC., |

19 | .           Nominal Defendant. |

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

**TABLE OF CONTENTS**

**Page**

ARGUMENT AND AUTHORITIES ................................................................................1

I.     Plaintiff Has Failed to State a Claim or Plead Demand Futility Regarding the Cash Awards ........................................................................................3

II.    Plaintiff's Claims Based on the December 2014 Stock Awards Are Barred Under Nevada Law, Fail to Show Demand Futility and May Not Be Asserted Directly ................................................................................5

     A.     N.R.S. § 78.211(1) and N.R.S. § 78.140(5) Bar Plaintiff's Claims.............5

     B.     Plaintiff Has Not Pled Demand Futility and Has Not Stated a Claim Based on His Allegation of "Interestedness" ...................................6

     C.     The December 2014 Shares Do Not Vest Until 2024 and Fail To Support an Inference of Entrenchment ........................................9

     D.     Plaintiff Has Thus Failed To Show Intentional Misconduct .....................11

     E.     Plaintiff Has Added Nothing New To His Meritless "Direct Claim" Argument ............................................................................12

III.     Plaintiff's Claims for Conduct Predating April 25, 2013 Are Barred by Limitations ........................................................................................13

IV.     Plaintiff Is Not an Adequate Class or Derivative Representative..........................13

CONCLUSION...............................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

***In re Biglari Holdings, Inc. S'holder Deriv. Litig.*,**
   **93 F. Supp. 3d 936, 948 (S.D. Ind. 2015)** ..................................................................10

*Brown v. Ticor Title Ins.*,
   982 F.2d 386 (9th Cir. 1992) ...............................................................................13

*City of Sterling Heights Police & Fire Retirement Sys. v. Kratz*,
   2014 WL 11997843 ......................................................................................3, 5, 12

***Desimone v. Barrows*,**
   **924 A.2d 908 (Del. Ch. 2007)**...............................................................................9

*East Texas Motor Freight Sys. Inc. v. Rodriguez*,
   431 U.S. 395 (1977)...............................................................................................13

*F5 Capital v. Pappas*,
   No. 14 Civ. 9356 (AT), 2016 WL 900389 (S.D.N.Y. Feb. 7, 2016) ...................8, 12

***In re Facebook, Inc. IPO Secs. & Deriv. Litig.*,**
   **2013 WL 6798160 (S.D.N.Y. Dec. 23, 2013)**.......................................................11

*Harriston v. Chicago Tribune Co.*,
   992 F.2d 697 (7th Cir. 1993) ...............................................................................13

***Interlake Porsche & Audi, Inc. v. Bucholz*,**
   **728 P.2d 597 (Wash. App. 1986)** .........................................................................6

*Landy v. D'Alessandro*,
   316 F. Supp. 2d 49 (D. Mass. 2004) ................................................................11, 12

*Lott v. Westinghouse Savannah River Co., Inc.*,
   200 F.R.D. 539 (D.S.C. 2000) ..............................................................................13

*Louisiana Mun. Police Employees Retirement Sys. v. Wynn*,
   829 F.3d 1048 (9th Cir. 2016) .............................................................................4, 11

***Miniace v. Pacific Maritime Ass'n*,**
   **424 F. Supp. 2d 1168 (N.D. Cal. 2006)**...............................................................7

*Rattray v. Woodbury County, IA*,
   614 F.3d 831 (8th Cir. 2010) ...............................................................................13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Raul v. Rynd*,
  929 F. Supp. 2d 333 (D. Del. 2013)..................................................................3, 5, 12

*Shoen v. SAC Holding Corp.*,
  137 P.3d 1171 (Nev. 2006)......................................................................................3

*Stewart v. Kroeker*,
  No. CV04-2130L, 2006 WL 167938 (W.D. Wash. Jan. 23, 2006) ...........................6

*Stilwell v. Clark County*,
  No. 2:11-cv-01549-RFB-VCF, 2016 WL 4033959 (D. Nev. July 26, 2016)
  (Boulware, J.).......................................................................................................14

**_Wood v. Baum_**,
  **953 A.2d 136 (Del. 2008)**................................................................................11

*In re ZAGG Inc.*,
  826 F.3d 1222 (10th Cir. 2016) .........................................................................4, 11

## Rules and Statutes

FCPA................................................................................................................11

N.R.S. § 78.138.7(b) .................................................................................1, 3, 4, 12

N.R.S. § 78.140(2) .................................................................................................8, 12

N.R.S. § 78.140(2)(a).................................................................................................8

N.R.S. § 78.140(2)(c).................................................................................................8

N.R.S. § 78.140(3) .....................................................................................................7

N.R.S. § 78.140(5) .........................................................................................4, 5, 7, 8, 12

N.R.S. § 78.211.........................................................................................................6

N.R.S. § 78.211(1) ...........................................................................................*passim*

1    Defendants Peter G. Kirby ("Kirby"), Louis Hoch ("Hoch") Michael R. Long

2  ("Long"), Kenneth Keller ("Keller"), Larry Morrison ("Morrison") (the "Individual

3  Defendants") and Nominal Defendant Payment Data Systems, Inc. ("Payment Data

4  Systems") ("Defendants") move to dismiss Plaintiff's Amended Complaint.

5    As suggested by the Court during the January 10, 2017 hearing, Defendants

6  will primarily rely on their past briefing and hereby incorporate by reference all of

7  the grounds for dismissal, arguments, briefing, exhibits and case authorities

8  referenced in their prior motions to dismiss and reply (Dkt. Nos. 12, 13, 15, 18, 28,

9  and 31).  Any new case authorities or statutes cited herein that were not cited in the

10  earlier filings will be **bolded and underlined.**

11                         **ARGUMENT AND AUTHORITIES**

12    Plaintiff's Amended Complaint does not allege a single new fact that would

13  show intentional misconduct, establish demand futility[1] or state a claim.  Instead of

14  pleading such facts as ordered by the Court, the Amended Complaint simply:

15  (i) repeats the same conclusory assertion Plaintiff's counsel made at the January 10,

16  2017 hearing about how Peter Kirby's December 2014 stock grant was supposedly

17  a "quid pro quo" for the management stock grants (with no new factual allegations

18  to support this bald conclusion) (Am. Compl. ¶¶ 71, 85-91); and (ii) adds an

19  allegation that Kirby had a conflict of interest because Louis Hoch was a student at

20  the business school in 1992-94 when Kirby was on the faculty there (*id.* ¶¶ 28-29).

21  A redline comparison showing the "new" allegations is attached as Exhibit 1 hereto.

22    In light of the Court's ruling that the statute of limitations bars claims based

23  on awards made before April 25, 2013 (*i.e.*, three years before filing of the current

24  suit), there are only three awards that remain at issue: (i) the cash salary and

25  bonuses for 2013, which totaled $724,200 split among four individuals (Am.

26

27

28
_____
[1] Under N.R.S. § 78.138.7(b), Plaintiff must allege facts showing "intentional misconduct, fraud or a knowing violation of the law."  Plaintiff has disclaimed any allegation of fraud and does not allege that Defendants violated any laws (let alone knowingly).

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Compl. ¶ 48); (ii) the cash salary and bonuses for 2014, which totaled $794,700 (*id.*

2   ¶ 59); and (iii) the December 2014 stock grants, which ***will not vest until 2024***[2]

3   (meaning that the recipients cannot sell the shares until then) (*id.* ¶ 56).[3]

4        Plaintiff has failed to take advantage of the "last best shot" that the Court

5   afforded him to plead a viable claim.  The Amended Complaint pleads no facts

6   showing that the cash awards are remotely excessive or improper, let alone that

7   they amount to intentional misconduct.  Plaintiff likewise pleads no facts showing

8   that the stock awards – which do not vest until 2024 – are excessive or amount to

9   intentional misconduct or "actual fraud" (which Plaintiff has disclaimed[4]).  Because

10  "fraud" must be pled to state a claim under Nevada law regarding an equity award,

11  the stock grant claims must be dismissed.  Plaintiff's claims are thus foreclosed by

12  the plain language of Nevada's business statutes and fail as a matter of law

13  regardless of whether direct or derivative, though Plaintiff has also failed to show

14  demand futility and has not pled facts showing that his "dilution" claim is direct.

15       Not only has Plaintiff failed to state a claim or plead demand futility with

16  respect to any awards cited in the Amended Complaint, but the consequence of the

17  Court's rejection of Plaintiff's equitable tolling argument is that Plaintiff has

18  defaulted any claim based on the October 4, 2012 equity grants – thus confirming

19  Plaintiff's inadequacy to sue in a derivative or class capacity.  Because Plaintiff has

20  again failed to state a claim and has demonstrated his inadequacy to sue in a

21  representative capacity, the Court should dismiss this case with prejudice.

22

23  _____

24  [2] *See* Ex. 2 hereto (April 29, 2016 Schedule 14A Proxy at 13 (listing "33,333 shares of common stock with a grant date fair value of $85,000 granted on December 29, 2014 that vest on December 29, 2024") and 17 (describing Dec. 29, 2014 grants to Long and Hoch in similar

25  terms).
[3] Any claims based on pre-April 25, 2013 conduct would fail in any event to the same extent and

26  for the same reasons as articulated in this motion and in Defendants' prior briefing.
[4] Plaintiff admitted in his previous opposition brief that he "has not pleaded fraud" and

27  acknowledged that admission during the January 10 hearing.  *See* Dkt. #26 at 23.  True to these admissions, ***the word*** "***fraud" appears nowhere in the Amended Complaint***.  Because Plaintiff

28  must show "actual fraud" to challenge an equity award under Nevada law, his claims over the December 2014 equity grants must be dismissed.

## I. PLAINTIFF HAS FAILED TO STATE A CLAIM OR PLEAD DEMAND FUTILITY REGARDING THE CASH AWARDS

The Amended Complaint does not allege, or even attempt to assert, any new facts showing that the cash awards are "intentional misconduct" or that the awards give rise to any claim under Nevada law.  Plaintiff has confined his purported "direct" claim (Count II) to the December 2014 stock award and has not alleged that the cash awards are direct claims.  *See* Am. Compl. ¶¶ 107-111.  Regardless of whether the claims are direct or derivative, they should be dismissed, as the complaint fails to state a claim.  *See* Dkt. #28 (Original Reply) at 3 & n. 8 (citing cases dismissing claims under Rule 12(b)(6) based on N.R.S. § 78.138.7(b) without reaching demand futility); *see also Raul v. Rynd*, 929 F. Supp. 2d 333, 337 (D. Del. 2013) (dismissing "excessive pay" claim under Rule 12(b)(6); *City of Sterling Heights Police & Fire Retirement Sys. v. Kratz*, 2014 WL 11997843, at \*2 ("Sterling offers nothing to show a breach of fiduciary duty" from excessive pay claim, even where management lost an advisory say-on-pay vote).  Plaintiff pleads no facts showing that the awards are wrongful, breach any duty or overcome the business judgment presumption under Nevada law.  *See Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006) (recognizing "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company"); N.R.S. § 78.138.7(b) (codifying business judgment presumption).

Once again, a bare allegation that an officer or director is paid too much does not state a claim or show demand futility.  *See* Dkt. #12 (Original Motion to Dismiss) at 11-15; Dkt. #28 (Original Reply) at 5-6 & n. 12 (citing numerous cases rejecting claims over executive compensation); *see also Raul*, 929 F. Supp. 2d at 337 (dismissing "excessive pay" claim under Rule 12(b)(6) for failure to state a claim); *Sterling Heights*, 2014 WL 11997843, at \*2 (same).  Merely comparing the

DOCUMENT PREPARED
ON RECYCLED PAPER

1   executives' salaries to the company's profits does not state a claim.  *See Sterling*

2   *Heights*, 2014 WL 11997843, at *2 ("By [plaintiff's] reasoning, executives at

3   Amazon should have worked for the minimum wage from 1994 to 2001 when it

4   first recorded a profit").  If a plaintiff could plead a claim under Rule 12(b)(6) or

5   establish demand futility simply by complaining that an executive makes $200,000

6   per year or that four executives shared less than $800,000, a plaintiff could survive

7   dismissal in every case, and the strict standards enacted by the Nevada Legislature

8   in N.R.S. § 78.138.7(b) would be an "empty gesture."  *See* Ex. 28 (Original Reply)

9   at 2-3 (citing *In re ZAGG Inc.*, 826 F.3d 1222, 1233 (10th Cir. 2016)).  Moreover, a

10   director's compensation is "presumed to be fair to the corporation" under N.R.S.

11   § 78.140(5).  Plaintiff has pled no facts rebutting this presumption.  Accordingly,

12   the Court need not even reach whether demand was futile (which it was not).

13       Not only has Plaintiff utterly failed to show intentional (or any) misconduct

14   with respect to the cash awards, but the Amended Complaint again fails to establish

15   that Kirby was "interested" with respect to the cash awards, thus precluding any

16   possibility of pleading demand futility.  *See* Dkt. #12 (Original Motion) at 9-17

17   (discussing standards for demand futility).  All Plaintiff alleges is that Kirby was a

18   long-tenured director and was on the Our Lady of the Lake University Business

19   School faculty 25 years ago when Hoch was a student.  *See* Am Compl. ¶¶ 28-29.

20   There is no allegation that Kirby received any compensation in connection with the

21   2013 and 2014 cash awards.  Courts applying Nevada and even Delaware law have

22   rejected far more particularized connections as insufficient.  *See* Dkt. #28 (Original

23   Reply) at 8 (citing cases where dismissal was granted despite far stronger

24   allegations, including *Louisiana Mun. Police Employees Retirement Sys. v. Wynn*,

25   829 F.3d 1048, 1059-62 (9th Cir. 2016) (describing far deeper ties between

26   challenged directors and Steve Wynn that were held insufficient)).  Moreover, as

27

28

1    explained more fully in Section II below, the Nevada Legislature has preempted

2    arguments that directors are "interested" by voting on compensation.

3        The claims regarding the cash awards thus fail to show demand futility, fail

4    to show that the awards are actionable in any respect, overcome the business

5    judgment rule or the presumption of fairness under N.R.S. § 78.140(5) (as

6    discussed further in Section II), fail to show that the awards amount to "intentional

7    misconduct," and fail to state a claim under Rule 12(b)(6).

8    **II.    PLAINTIFF'S CLAIMS BASED ON THE DECEMBER 2014 STOCK**

9          **AWARDS ARE BARRED UNDER NEVADA LAW, FAIL TO SHOW**

10         **DEMAND FUTILITY AND MAY NOT BE ASSERTED DIRECTLY**

11         **A.    N.R.S. § 78.211(1) and N.R.S. § 78.140(5) Bar Plaintiff's Claims**

12       Plaintiff's claims regarding the December 2014 stock grant likewise fail.

13   Again, Plaintiff has alleged no facts (other than the mere size of the awards, which

14   do not vest until 2024) showing that they are excessive.  *See* Dkt. #12 (Original

15   Motion to Dismiss) at 11-15; Dkt. #28 (Original Reply) at 5-6 & n. 12 *see also*

16   *Raul*, 929 F. Supp. 2d at 337 (dismissing "excessive pay" claim for failure to state a

17   claim even though 59% of shareholders voted to disapprove such plan during say-

18   on-pay vote and even though company's performance deteriorated during time

19   period covered by pay increase); *Sterling Heights*, 2014 WL 11997843, at *2

20   (dismissing claim even though 60% of voting shareholders opposed the awards).

21   Unlike in *Raul*, *Sterling Heights*, and the numerous other cases cited in Defendants'

22   prior briefing (Dkt. #12 at 11-15; Dkt. #28 at 5-6 & n. 12), there is no allegation

23   that Payment Data Systems suffered a downturn in performance during 2014.[5]

24   Unlike in *Raul* and *Sterling Heights* (where large majorities of voting shareholders

25   rejected the compensation packages in say-on-pay votes), here more than 98% of

26   voting shareholders ***approved*** the compensation awards at issue.  (*See* Dkt. #12 at

27

28   ───────────
     [5] To the contrary, gross profits for Payment Data Systems in 2014 were more than four times
     higher than in 2013.  *See* Dkt. #12 at 13-14.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   14 and Ex. 12 to Dkt. #12.)   If the allegations in *Raul* and *Sterling Heights* were

2   insufficient to survive a Rule 12(b)(6) motion, the far weaker allegations here are

3   similarly deficient and fail to state a claim.   The allegations similarly fail to

4   overcome the presumption of the business judgment rule.  *See Shoen*, 137 P.3d at

5   1178; N.R.S. § 78.138.7(b) (codifying business judgment presumption).   Nor does

6   Plaintiff show "intentional misconduct" as required by N.R.S.  § 78.138.7(b).

7   　　　Plaintiff's claims over the December 2014 grant are also barred as a matter of

8   law (regardless of whether demand is futile, although Plaintiff also fails to plead

9   futility as set forth below) because equity grants are not actionable outside "actual

10  fraud," an allegation Plaintiff has expressly disclaimed.  Under N.R.S. § 78.211(1),

11  "[t]he judgment of the board of directors as to the consideration received for"

12  shares issued by the Company "*is conclusive in the absence of actual fraud in the*

13  *transaction.*"    Again, Plaintiff has expressly disclaimed any allegation of fraud,

14  does not use the word "fraud" anywhere in the Amended Complaint and does not

15  argue that his conclusory "quid pro quo" allegation shows fraud.  Nothing in the

16  plain language of N.R.S. § 78.211(1) states that the directors' judgment is any less

17  "conclusive" merely because everyone voted on everyone's compensation.

18  Allegations that an equity grant is tainted by allegations of "control" or

19  "interestedness" fail to overcome this statute.  *See Stewart v. Kroeker*, No. CV04-

20  2130L, 2006 WL 167938, at *4 (W.D. Wash. Jan. 23, 2006) ("Plaintiffs'

21  allegations of control are unsupported and, *even if proven*, do not give rise to an

22  inference of fraud that would overcome the *conclusive determination* of the Board

23  under N.R.S. § 78.211. . . .  *Even if 'control' is assumed, that does not change the*

24  *fact that Envyr provided services in exchange for the 1,000,000 shares* . . . )

25  (emphasis added); *cf.* **Interlake Porsche & Audi, Inc. v. Bucholz, 728 P.2d 597,**

26  **518-19 (Wash. App. 1986)** (construing Washington statute and rejecting argument

27  "that Bucholz's salary increases were improper because Bucholz was an interested

28

1  director who voted on his own salary as an officer"). As in *Stewart*, Plaintiff does

2  not and cannot dispute that Defendants provided services in return for the grants.

3  **B.    Plaintiff Has Not Pled Demand Futility and Has Not Stated a**

4  **Claim Based on His Allegation of "Interestedness"**

5  Plaintiff likewise has not pled demand futility and has failed to state a claim

6  based on "interestedness." While Plaintiff will no doubt again rely on inapposite

7  Delaware cases, the Nevada legislature has preempted the argument that having

8  directors vote on each other's (or their own) compensation gives rise to a conflict or

9  creates interestedness sufficient to excuse demand (let alone to state a claim).

10  N.R.S. § 78.140(5) *"allows even interested directors to vote on their*

11  *compensation."* *See* Ex. 1 to previous Reply (Dkt. #28-1) at p. 5 of PDF (Excerpts

12  from Legislative History with explanation from Chair of the Nevada State Bar's

13  Business Law Section on meaning of amendment);[6] *see also* **_Miniace v. Pacific_**

14  **_Maritime Ass'n_, 424 F. Supp. 2d 1168, 1183 (N.D. Cal. 2006)** ("Section 78.140(4)

15  states *in no uncertain terms* that a board of directors may establish compensation

16  for directors 'without regard to personal interest.' . . . . Based on this provision, the

17  Court finds that *the mere fact that Miniace voted in favor of a director's fee*

18  *cannot support a claim that he breached his duty of loyalty*.") (emphasis added).[7]

19  The Nevada Legislature has thus preempted Plaintiff's Delaware argument

20  that Kirby is "interested," let alone has committed "intentional misconduct," simply

21

---

22  [6] The relevant language from N.R.S. § 78.140(5) was proposed to be contained in N.R.S. §
23  78.140(3) at the time, which is why the Chair references N.R.S. § 78.140(3) rather than N.R.S. §
78.140(5).

24  [7] The court in *Miniace* did hold that there was a fact question on the separate issue of whether the
director fee was excessive, but that case involved testimony that the cash fee was ten times
25  greater than it should have been. 424 F. Supp. 2d at 1183-84. Plaintiff, by contrast, pleads no
facts showing that the stock grants are excessive. *See supra* pp. 2-3 (bare allegation that
26  executives make too much insufficient to show excessive compensation). Not only are no such
facts pled here, but the instant case involves an equity rather than cash grant, which thus triggers
27  the statutory "actual fraud" requirement. Under § 78.211(1), "[t]he judgment of the board of
directors as to the consideration received for" shares issued by the Company "*is conclusive in the*
28  *absence of actual fraud in the transaction*" (emphasis added). Plaintiff has again disclaimed any
allegation of fraud and thus cannot state a claim based on the equity grants.

1    because all directors voted on the December 2014 equity grants.  Directors have full

2    statutory authority to vote on all equity grants, and their judgment is conclusive

3    (regardless of any alleged interestedness) absent fraud, which Plaintiff has

4    disclaimed in this case.  Having disclaimed any allegation of "actual fraud," and

5    having chosen to sue based on the law of a state that expressly permits directors to

6    vote on their own compensation, Plaintiff is estopped from arguing that his

7    conclusory assertions of a "quid pro quo" are sufficient to plead "actual fraud" or to

8    show demand futility.  The fact that Nevada law specifically permits the awards at

9    issue requires dismissal of all claims relating to the December 2014 awards.

10         Even under Delaware law, a bare allegation that a director was granted stock

11   on the same day he approved some other challenged transaction would not show

12   interestedness, let alone intentional misconduct.  *E.g., F5 Capital v. Pappas*, No. 14

13   Civ. 9356 (AT), 2016 WL 900389, at *6 (S.D.N.Y. Feb. 7, 2016) ("Even taking as

14   true that Softeland *was granted shares on the same day* the board approved the

15   merger, . . . *Plaintiff's speculative assertion that the shares were given in*

16   *exchange for his vote approving the merger lacks the factual specificity that is*

17   *required to raise doubts about Softeland's impartiality*") (emphasis added).

18   Plaintiff likewise offers nothing but rank speculation, unsupported by any

19   particularized facts, that the award to Kirby was a "quid pro quo" in exchange for

20   Kirby's vote on the executive grants.  The allegations fail to take this case outside

21   the express protections of Nevada law, let alone show intentional misconduct.

22         In addition, N.R.S. § 78.140(2) provides that transactions with interested

23   directors (to the extent Kirby can be considered "interested," which as stated above

24   he is not) are not void or voidable as long as: (a) "[t]he fact of the . . . financial

25   interest is known to the board of directors or committee, and the directors or

26   members of the committee, other than any common or interested directors or

27   members of the committee, approve or ratify the contract or transaction in good

28

1    faith"; or (c) "[t]he contract or transaction is fair as to the corporation at the time it

2    is authorized or approved."  There is no allegation that Kirby had any interest in the

3    financial compensation paid to the other defendants or lacked knowledge regarding

4    the other Defendants' financial interest in receiving the compensation.  His

5    approval thus triggers the protection enshrined in N.R.S. § 78.140(2)(a).  Plaintiff

6    also pleads no facts showing that the awards are unfair, let alone so blatantly unfair

7    as to show intentional misconduct.  N.R.S. § 78.140(2)(c).  Plaintiff's claims thus

8    fail even if N.R.S. § 78.140(5) and N.R.S. § 78.211(1) did not apply, though these

9    provisions plainly do apply and preclude liability.

10      **C.    The December 2014 Shares Do Not Vest Until 2024 and Fail To**

11         **Support an Inference of Entrenchment**

12      The fact that the December 29, 2014 awards ***do not vest for ten years***[8] further

13   dilutes Plaintiff's already-groundless argument that the awards were excessive or

14   otherwise improper.  *See **Desimone v. Barrows*, 924 A.2d 908, 916 (Del. Ch. 2007)**

15   (noting that "three-year vesting schedule" of option grants "undercut" plaintiff's

16   fiduciary duty claims and, in light of other restrictions on the awards, made it "not

17   rational to infer from the pled facts that the board harbored any illicit intent to

18   enrich the recipients . . . ."); *id.* at 945 (noting that "vesting restrictions" made

19   grants "even less material").

20      Contrary to the impression left by the Amended Complaint, Defendants Hoch

21   and Long ***did not increase their percentage share ownership from 2014 to 2015***,

22   which is what one would expect if the purpose was to "entrench" them:

23      • As demonstrated on page 43 of the Company's March 31, 2014 Form

24         10-K, Long owned 23.2% of the Company's shares as of December

25         31, 2013, while Hoch owned 24.3%, for a total combined interest of

26         47.5.[9]  (Ex. 2 hereto at 43.)

27

28   [8] *See supra* footnote 1.
     [9] Ex. 3 hereto (Mar. 31, 2014 Form 10-K at 42-43).

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

3

4

- As set forth on page 44 of the Company's March 30, 2015 Form 10-K, Long beneficially owned 22.4% of the Company's shares as of December 31, 2014, while Hoch beneficially owned 22.1%, for a combined total of 44.5%.  (Ex. 3 hereto at 44.)

5

6

7

8

9

- As set forth on page 29 of the June 5, 2015 Schedule 14A (*i.e.*, the proxy statement on which Plaintiff bases much of his complaint), Long beneficially owned 21.8% of the outstanding shares as of May 8, 2015, while Hoch beneficially owned 21.2% for a total combined interest of 43% (Ex. 4 hereto at 28-29.)

10

11

12

13

14

- As set forth on page 43 of the Company's March 30, 2016 Form 10-K, Long owned 21.4% of the Company's shares as of March 15, 2016, while Hoch owned 19.9%, for a total combined interest of 41.3%, with the combined interest of all directors and officers declining to 45%. (Ex. 5 hereto at 42-43.)

15

16

17

18

19

20

21

22

Far from "entrenching" themselves, Long and Hoch saw their individual and combined interests *decline* from 47.5% combined as of March 31, 2014, to 44.5% combined on December 31, 2015, to 43% combined as of May 8, 2015, to 41% as of March 15, 2016.  There is no allegation that Long and Hoch (or any other December 2014 grant recipients) used their positions to thwart a change in control or otherwise prevent other shareholders from approving any specific resolution. Plaintiff's tale of "entrenchment" has no basis in reality and fails to show any intentional misconduct, let alone "actual fraud," in the awards.

23

24

25

26

27

While Plaintiff's "entrenchment" argument is irrelevant given his disclaimer of any "fraud" allegation (thus rendering the Board's judgment "conclusive" under N.R.S. § 78.211(1)), Plaintiff's allegations would fail even under Delaware law.  A complaint does not plead entrenchment under Delaware law unless it plausibly alleges "that the 'sole or primary purpose' of the challenged board action was to

28

1    perpetuate the directors in control of the corporation." ***In re Biglari Holdings, Inc.***

2    ***S'holder Deriv. Litig., 93 F. Supp. 3d 936, 948 (S.D. Ind. 2015)*** (applying

3    Delaware law) (internal citations and quotation marks omitted).    Importantly,

4    allegations of an entrenchment motive "have been found insufficient to excuse

5    demand" when "a plaintiff has not pleaded any facts showing that the directors'

6    positions ***were actually threatened at the time they took the challenged actions***."

7    *Id.* at 948 (emphasis added).  Plaintiff does not allege that the positions of Hoch,

8    Long or Kirby were threatened at the time of the awards.  The public record indeed

9    conclusively refutes this argument, given that the directors were overwhelmingly

10   re-elected with no opposition.  *See* Dkt. #12 (Original Motion) at 14-15.  Plaintiff

11   has offered no facts showing that the awards were in any way improper.

12              **D.    Plaintiff Has Thus Failed To Show Intentional Misconduct**

13          Plaintiff has thus failed to plead facts showing that the December 2014 stock

14   award (or the other cash and stock awards cited in the Amended Complaint)

15   violates Nevada law, let alone amounts to "intentional misconduct."  Plaintiff must

16   allege facts showing that the directors "knew" their actions were improper.  *See*

17   *Wynn*, 829 F.3d at 1061 ("[E]ven assuming that the Macau donation did in fact

18   violate the FCPA, the allegations do not create a reasonable inference that any of

19   the individual directors ***intended or knew that it would do so***, as Nevada law would

20   require"); *In re ZAGG*, 826 F. 3d at 1232 (plaintiff must plead "***knowledge of***

21   ***wrongfulness***").  Given that the Nevada statutes specifically allow directors to vote

22   on everyone's compensation without being considered "interested" and preclude

23   any challenge to equity compensation absent "actual fraud," and given Plaintiff's

24   failure to plead any facts showing a "quid pro quo," that the awards were excessive

25   or that they were made for entrenchment purposes, Plaintiff has not shown

26   intentional (or any) misconduct.  Again, Plaintiff not only must show "intentional

27   misconduct," but "actual fraud" to plead a claim based on the equity grants.

28

1    Even under Delaware law, a plaintiff must plead facts showing that the

2    directors "knew that the alleged transactions were improper." ***Wood v. Baum*, 953**

3    **A.2d 136, 142 (Del. 2008)** (dismissing suit despite alleged SEC violations; "board

4    approval of a transaction, even one that later proves to be improper, without more,

5    is an insufficient basis to infer culpable knowledge"); ***In re Facebook, Inc. IPO***

6    ***Secs. & Deriv. Litig.*, 2013 WL 6798160, at \*19 (S.D.N.Y. Dec. 23, 2013)**

7    ("Pleading 'awareness' [of illegal conduct] is not enough.  Plaintiffs must allege

8    particularized facts showing that the Director Defendants 'knew' that [the conduct]

9    was illegal"); *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 65 (D. Mass. 2004)

10   ("[W]hat plaintiff offers—factual allegations that demonstrate *that the transactions*

11   *violated the law—is insufficient,* in the ordinary course, to create reasonable doubt

12   that the board failed to exercise business judgment in approving the transactions");

13   *id.* at 68 ("*Only a knowing violation of the law* renders a decision outside the

14   business judgment rule").

15   Given the clear protections of N.R.S. § 78.140(5) and N.R.S. § 78.211(1) and

16   the absence of any facts showing the awards were remotely excessive or improper

17   (let alone that any directors actually *knew* they were improper), Plaintiff has failed

18   to plead intentional misconduct as to *any* grants or compensation at issue in this

19   case.  And again, Plaintiff's disclaimer of any fraud allegation precludes his claims

20   over the December 2014 equity grants, which require *actual fraud* to be actionable

21   under N.R.S. § 78.211(1).

22   **E.**    **Plaintiff Has Added Nothing New To His Meritless "Direct Claim"**

23          **Argument.**

24   Plaintiff's failure to plead facts taking this case outside the protections of

25   N.R.S. § 78.138.7(b), N.R.S. § 78.140(5), N.R.S. § 78.211(1) and N.R.S. §

26   78.140(2), let alone show intentional misconduct, requires dismissal of this case

27   regardless of whether the claims are direct or derivative.  *See* Dkt. #28 (Original

28

1    Reply) at 3 & n. 8 (citing cases dismissing claims under Rule 12(b)(6) based on

2    N.R.S. § 78.138.7(b) without reaching demand futility); *see also Raul*, 929 F. Supp.

3    2d at 337 (dismissing under Rule 12(b)(6)); *Sterling Heights*, 2014 WL 11997843,

4    at *2 (same).

5          Regardless, the Amended Complaint adds no new facts to support Plaintiff's

6    assertion that the December 2014 award gives rise to direct claims.  *See* Dkt. #28

7    (Original Reply) at 8-10 (discussing how equitable dilution claims are typically

8    regarded as derivative claims); *F5 Capital*, 2016 WL 900389, at *10 (refusing to

9    extend *Gentile* to transaction where largest shareholder held only 21% of shares and

10   allegations did not show "inadequate consideration").   Plaintiff alleges no facts

11   (other than conclusory speculation) that Hoch and Long had a "blood pact" to vote

12   together (which cannot be inferred merely because they are officers or directors) or

13   that the share grants were excessive.  Even if Nevada followed Delaware's narrow

14   exception to the rule that dilution claims are derivative, Plaintiff has failed to plead

15   facts placing this case within that exception, as bare allegations that defendants

16   worked together at the company are insufficient to aggregate their holdings into a

17   "control" group sufficient to trigger the exception.  *See* Dkt. #28 at 8-10.

18   **III.    PLAINTIFF'S CLAIMS FOR CONDUCT PREDATING APRIL 25,**

19            **2013 ARE BARRED BY LIMITATIONS**

20         Defendants understand that the Court orally dismissed all claims arising from

21   conduct predating April 25, 2013 and rejected Plaintiff's equitable tolling

22   argument.   Because Plaintiff has reasserted his claims regarding the time-barred

23   awards (albeit with no new factual allegations), Defendants reassert their statute of

24   limitations arguments and their arguments against tolling.  *See* Dkt. #12 (Original

25   Motion) at 22-24; Dkt. #28 (Original Reply) at 10-11.  Even apart from limitations,

26   the pre-2013 claims fail to the same extent and for the same reasons as the post-

27   2013 cash and stock awards.

28

## IV. PLAINTIFF IS NOT AN ADEQUATE CLASS OR DERIVATIVE REPRESENTATIVE

The Court's disposition of the equitable tolling issue cements Plaintiff's inadequacy to represent the corporation or putative class. *See* Dkt. #12 (Original Motion) at 21-22; Dkt. #28 (Original Reply) at 11-12. Plaintiff's unexcused default of the claims over the October 2012 equity grants cannot be reconciled with the "fiduciary" obligations owed by class and derivative representatives. *See Rattray v. Woodbury County, IA*, 614 F.3d 831, 835-36 (8th Cir. 2010) (finding lack of adequacy based on plaintiff's delays in prosecuting key aspects of case); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993) (same). The fact that most shareholders have voted against the position advocated in this suit further demonstrates that Plaintiff is not adequate. *See* Dkt. #28 at 12 (citing *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977) (conflict exists when class members vote against position advocated by plaintiff); *see also Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 562 (D.S.C. 2000) (finding conflict where "segments of the proposed class advocate different positions as to several of the challenged employment policies"); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (adequacy requires "absence of antagonism" between plaintiff's interests and interests of absent class members and "a sharing of interests between representatives and absentees")).

Accordingly, having alleged no new facts in his "last best shot" to amend, Plaintiff's claims should be dismissed with prejudice. *See Stilwell v. Clark County*, No. 2:11-cv-01549-RFB-VCF, 2016 WL 4033959, at \*10 (D. Nev. July 26, 2016) (Boulware, J.) (dismissing case with prejudice).

## CONCLUSION

For the reasons set forth herein, Defendants request that the Court dismiss this case in its entirety, with prejudice.

Dated:  January 24, 2017

/S/ PETER A. STOKES
J. BRUCE ALVERSON, ESQ.
Nevada Bar No. 1339
KARIE N. WILSON, ESQ.
Nevada Bar No. 7957
**ALVERSON TAYLOR**
**MORTENSEN & SANDERS**
7401 W. Charleston Boulevard
Las Vegas, Nevada 89117
Telephone:  (702) 384-7000
Facsimile:   (702) 385-7000

PETER A. STOKES
**NORTON ROSE FULBRIGHT US**
**LLP**
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

Attorneys for Defendant Payment Data
Systems, Inc.

## Certificate of Service

I hereby certify that this document was filed on January 24, 2017 using the

Court's ECF filing system, which delivers a copy to all counsel of record who are

registered to receive ECF service in this case.

/s/ PETER A. STOKES
PETER A. STOKES

DOCUMENT PREPARED
ON RECYCLED PAPER