UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL MCFARLAND,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL R. LONG, *et al*.<br><br>Defendants. | Case No. 2:16-cv-00930-RFB-PAL<br><br>**ORDER** |

**I.  INTRODUCTION**

This case is before the Court on Defendant Louis A. Hoch's Motion to Dismiss (ECF No. 31) and Defendants' Joint Motion to Dismiss (ECF No. 52). Motion to Dismiss (ECF No. 31), which joined Motions to Dismiss (ECF Nos. 12 and 18) in full, is subject to the Court's orders on those motions from January 10, 2017. Therefore, Motion to Dismiss (ECF No. 31) is GRANTED in part and DENIED in part, pursuant to the Court's order at Docket 53.

The Court held a hearing on Motion to Dismiss (ECF No. 52) on May 18, 2017.

**II.  BACKGROUND**

**A. Claims**

Plaintiff brings the following claims:

1.) A claim for breach of the fiduciary duty of loyalty, a derivative claim against all Defendants for granting themselves excessive and unfair compensation during 2013 and 2014, as well as an individual claim against Defendant Kirby for failing to implement controls to ensure fair compensation;

2.) A claim for breach of the fiduciary duty of loyalty directly against all Defendants for granting themselves a December 2014 stock award, which Plaintiff alleges "resulted in an improper transfer of economic value and voting power from the Company's minority public shareholders to Defendants" in an action which was designed to advance Defendants' own interests; and

3.) An unjust enrichment claim derivatively against Defendants Long, Hoch, Morrison, and Keller.

**B. Alleged Facts**

Plaintiff is a minority stockholder in Payment Data Systems ("Payment Data" or "the Company"). Payment Data generates revenues by charging fees for the electronic processing of payment transactions. Payment Data is a small company with revenues of $25.92 million in the aggregate from 2012-2014. As of June 26, 2015, Payment Data had a market capitalization of approximately $51 million.

Since co-founding the Company in 1998, Long has served as CEO and Hoch has served as President and COO. Long also served as CFO from September 2003 until March 2015. From 2003 until March 2015, only two other executive officers, Morrison and Keller, have been employed by the Company. Morrison has served as the Company's Senior Vice President and Marketing Officer since July 2003, and Keller has served as the Company's Senior Vice President and Chief Technology Officer since 2007.

Between 1999 and 2003, the Company had a Board consisting of between five to seven members, including Long and Hoch. During this time, the Board had an independent Audit Committee and an independent Compensation Committee, both of which were comprised of two to four members. Following the resignation of four directors between 2002 and 2003, by 2004 the Board consisted of only Long, Hoch, and Kirby. Until April 2015, the Board therefore comprised of Long and Hoch (management) and just one "purportedly independent" director Kirby. Between 2004 and April 2015, Kirby served as the lone member of the Board's Audit Committee. In its public filings, Payment Data acknowledges that Kirby does not meet the criteria to constitute an

"audit committee financial expert" as defined under the SEC's rules. Between 2004 and 2007, Kirby was the lone member of the Board's Compensation Committee, which, as described in Payment Data's annual proxy statements during that period, had "authority to set all forms of compensation of Payment Data's executive officers." After 2007, the Company's public filings no longer mention the existence of a Compensation Committee.

Instead, beginning in 2007, Kirby simply allowed the executive officers themselves to decide how they would be paid. The executive officers responded by awarding themselves most of Payment Data's gross profits as compensation. On February 27, 2007, Long entered into an employment agreement with the Company which, among other things, provided for an annual salary, bonus payments, and stock awards, through December 31, 2011. Hoch signed the employment agreement on behalf of the Company. That same day, Hoch himself entered into an employment agreement with the Company which, among other things, provided for an annual salary, bonus payments, and stock awards through December 31, 2011. Long signed the employment agreement on behalf of the company.

With Kirby failing to exercise any oversight, between 2007 and 2012 Long, Hoch, Keller, and Morrison paid themselves excessive salaries and cash bonuses. Between 2007 and 2012, Payment Data made gross profits of approximately $7.4 million, while the Officer Defendants took for themselves in excess of $3.14 million in the form of self-determined salaries and cash bonus payments, 42.45% of the Company's gross profits. At least to the extent this information was disclosed in Payment Data's SEC filings, Kirby was aware of the levels of compensation awarded by the Officer Defendants to themselves as well as how that compared with Payment Data's financial performance, including its gross profit. Kirby signed each Payment Data Annual Report filed on Form 10-K with the SEC which disclosed this information.

In addition to the salaries and cash bonuses, the Officer Defendants also granted themselves tens of millions of shares of Payment Data common stock: On February 27, 2007, Long and Hoch were each granted 500,000 shares of common stock and 2.5 million shares of restricted common stock; On November 1, 2007, Long and Hoch were each granted 3,085,715 shares of common stock; On January 9, 2008, Long and Hoch were each granted 7.75 million shares of restricted

stock and Keller was granted 500,000 shares of common stock and 1,550,000 shares of restricted stock; On November 12, 2008, Long and Hoch were each granted 6,171,429 shares of common stock**;** On November 1, 2009, Long and Hoch were each granted 7,200,000 shares of common stock; On November 4, 2010, Long and Hoch were each granted 5,400,000 shares of restricted common stock; and on October 4, 2012, Long and Hoch were each granted 1 million shares of restricted stock, Keller was granted 500,000 shares of restricted stock, and Morrison was granted 450,000 shares of restricted stock.

Many of these stock awards were awarded as annual bonuses pursuant to the terms of their respective employment agreements. However, Plaintiff alleges that those employment agreements were not the product of good faith arms length negotiations. As a consequence of the stock transfers, by December 31, 2012, the Officer Defendants owned 54.13% of Payment Data's outstanding common stock, and had the power to approve any action that would otherwise require approval of a majority of Payment Data's shareholders. During 2013, the Officer Defendants transferred to themselves 74.28% of the Company's gross profits for the year. In large part due to the compensation payments, Payment Data suffered a net loss of $789,039 during 2013. During 2013 and 2014, the collective voting power of the Officer Defendants fell below 50%, falling to under 43% by late 2014. This was because Long and Hoch transferred shares back to the Company to satisfy debts on margin loans; Hoch sold many of his shared of Payment Data stock; and on December 22, 2014, the Company entered into an asset purchase agreement with Akimbo Financial, Inc., purchasing substantially all of the assets of Akimbo, and issuing 13.5 million shares of restricted stock to the owners of Akimbo.

Plaintiff goes on to allege that in 2014 and 2015, the employment agreements of the Officers (which he alleges were not a product of arms length negotiation), continued to award them excessive compensation and bonuses. Plaintiff alleged that Payment Data Systems failed to disclose a 22 million share December 2014 grant in the company's Proxy, provided to shareholders before the annual shareholder meeting – however, Plaintiff simultaneously admits that the Proxy disclosed these grants on a table, and that they were publicly disclosed in Form 4 filings. Plaintiff alleges that Kirby was granted 500,000 shares of Payment Data common stock in December 2014,

which harmed the Company's minority public shareholders, in that it resulted in a transfer of voting power to the Defendants. Kirby was awarded the 500,000 shares in exchange for his support of the December 2014 stock grant which gave voting control back to the Officer Defendants. Therefore, Plaintiff wishes to bring direct claims on a class-wide basis for the losses allegedly suffered by minority shareholders due to the loss of "economic value and voting power" from them.

### C. Procedural History

Plaintiff filed his Complaint against Defendants Long, Hoch, Morrison, Keller, Kirby, and Payment Data Systems, on April 25, 2016. (ECF No. 1). Defendants Kirby, Long, Keller, and Payment Data Systems, filed a Motion to Dismiss on July 26, 2016. (ECF No. 12). Defendant Morrison filed a Motion to Dismiss on August 4, 2016, adopting and joining in full Motion to Dismiss (ECF No. 12), and raising two statutory arguments which were also included in the other Defendants' Reply Brief. (ECF No. 18). Defendant Hoch adopted and joined in full both Motions to Dismiss on October 7, 2016. (ECF No. 31).

A Motion to Stay Discovery was granted on November 1, 2016, pending the outcome of the Motions to Dismiss. The Court held a hearing on the earlier Motions on January 10, 2017. The Court granted in part and denied in part the motions to dismiss, dismissing with prejudice all claims against Payment Data Systems, dismissing claims related to conduct prior to April 25, 2013, and dismissing the unjust enrichment claim as duplicative. Plaintiff was permitted to file an Amended Complaint.

Plaintiff filed an Amended Complaint on January 17, 2017 (ECF No. 51). Defendants' filed their Motion to Dismiss on January 24, 2017 (ECF No. 52), to which Plaintiff responded on January 31, 2017, and Defendant Replied on February 7, 2017 (ECF No. 56).

### III. LEGAL STANDARD

#### A. Motion to Dismiss

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations

of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

**IV. ANALYSIS**

**A. Claims Previously Dismissed**

The Court allowed Plaintiff to amend the Complaint to add facts related to intentional misconduct, and the establishment of demand futility. Claims against Payment Data Systems itself, as a corporate entity, were dismissed with prejudice in the Court's January 2017 order. They have been raised anew in the Amended Complaint to preserve issues for appeal, but the Court once again dismisses Payment Data Systems as a Defendant.

The Court also previously dismissed the unjust enrichment claims as duplicative of the breach of duty claims. Plaintiff has raised this claim anew in the Amended Complaint, but the Court once again dismisses it for the same reasons as its January 2017 order.

**B. Sufficiency of Allegations of Intentional Misconduct**

**1. Allegations of Excessive Compensation**

Under Nevada law (as with many other states), there exists a "business judgment rule" which creates a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Shoen v. SAC Holding Corp., 122 Nev. 621, 632 (2006).

NRS 78.138 governs the exercise of powers, performance of duties, presumptions and considerations, and liability to corporation and stockholders, of directors and officers. It delineates a fairly strict liability standard, subject only to certain statutory exemptions, none of which Plaintiff has claimed are relevant in this case. Subsection 7 states, in relevant part, that "Except as otherwise provided in [various statutes not at issue in this case], or unless the articles of incorporation or an

amendment thereto . . . provide for greater individual liability, a director or officer is not individually liable to the corporation or its stockholders or creditors for any damages as a result of any act or failure to act in his or her capacity as director or officer unless: (a) The trier of fact determines that the presumption established by [a prior subsection] has been rebutted; and (b) It is proven that: (1) The director's or officer's failure to act constituted a breach of his or her fiduciary duties as a director or officer; and (2) Such breach of those duties involved **intentional misconduct, fraud, or a knowing violation of the law**." (emphasis added). See also In re Amerco Derivative Litig., 127 Nev. 196, 223-24 (2011) (affirming that individual officer liability requires "intentional misconduct, fraud or a knowing violation of law"); In re ZAGG Inc. Shareholder Derivative Action, 826 F.3d 1222, 1230 (10th Cir. 2016) (affirming that Nevada's standard requires intentional misconduct, fraud or a knowing violation of the law).

To overcome the presumptions afforded by the Nevada business judgment rule, shareholders "must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decisions." Louisiana Mun. Police Emps. Ret. Sys. v. Wynn, 829 F.3d 1048, 1062 (9th Cir. 2016) (citations omitted).

Plaintiff argues that Delaware's "entire fairness" doctrine applies to the compensation awards. However, the plain language of N.R.S. 78.138.7(b) states that a higher, "intentional misconduct" standard applies to all officer and director claims. Furthermore, as to the December 2014 stock disbursement, N.R.S. 78.211(1) states the "the judgment of the board of directors as to the consideration received for" shares issued by the Company "is conclusive in the absence of actual fraud in the transaction." The Court therefore finds that the plain language of the text of the Nevada statute governs the claims in this case.

As set forth above, Plaintiff must meet the heightened pleading requirement of intentional misconduct, fraud, or a knowing violation of the law. Plaintiff has admitted that he is not pleading fraud on the part of the Defendants. The allegations do not show that the challenged awards were illegal, nor does Plaintiff allege that the awards were prohibited by the Company's charter or bylaws or other formation documents, nor that there were any intentional wrongdoings or

fraudulent activities. All of the challenged awards were disclosed in SEC filings. At the prior hearing, Plaintiff disclaimed any fraud allegations, and was permitted to amend the Complaint to state more specific facts regarding "intentional misconduct," which is the theory by which Plaintiff attempts to overcome the presumption of the Nevada business judgment rule.

The Amended Complaint is largely the same as the initial Complaint, however, Plaintiff has added allegations that Kirby was a long-tenured director and was on the Our Lady of the Lake University Business School faculty 25 years ago when Hoch was a student, and therefore had a longstanding relationship with him. There is no allegation that Kirby received any compensation in connection with the 2013 and 2014 cash awards. Plaintiff has alleged that Kirby's award was a "quid pro quo" in exchange for Kirby's vote on the executive grants. Plaintiff fails to plead any other specific facts related to the alleged "quid pro quo." These allegations do not amount to "knowledge of wrongfulness" or "intentional misconduct" sufficient to overcome the strict Nevada statutory bar to liability regarding executive compensation decisions.

The failure to plead sufficient facts amounting to intentional misconduct defeats both the direct and derivative claims Plaintiff is seeking regarding excessive compensation.

## 2. The December 2014 Stock Awards

NRS 78.211(1) specifies that "The judgment of the board of directors as to the consideration received for shares issued is conclusive in the absence of actual fraud in the transaction." Plaintiff has not pled fraud, and therefore, the Board's judgment is conclusive that the Company received adequate consideration for the December 2014 stock grant. Furthermore, NRS 78.140(5), which governs director compensation and interested director transactions, states that "Unless otherwise provided in the articles of incorporation or the bylaws, the board of directors, without regard to personal interest, may establish the compensation of directors for services in any capacity. If the board of directors establishes the compensation of directors pursuant to this subsection, such compensation is presumed to be fair to the corporation unless proven unfair by a preponderance of the evidence."

Nevada's laws confer substantial discretion to directors regarding their decisions as to

consideration for shares issued, and their decisions regarding compensation. Plaintiff's opinion that the December 2014 stock transfer was made without fair consideration does not amount to an allegation of "actual fraud in the transaction." Plaintiff argues that Delaware's "entire fairness" doctrine applies to the compensation awards. However, as the Court has found, the plain language of N.R.S. 78.138.7(b) states that a higher, "intentional misconduct" standard applies to all officer and director claims. Furthermore, as to the December 2014 stock disbursement, N.R.S. 78.211(1) states that "the judgment of the board of directors as to the consideration received for" shares issued by the Company "is conclusive in the absence of actual fraud in the transaction." Plaintiff has admitted that he is not pleading fraud on the part of the Defendants.

Absent any allegations of actual fraud, the December 2014 stock issuance and awards are not actionable as violative of the duty of loyalty.

**C. Demand Futility**

Defendants further argue that Plaintiff has failed to adequately plead demand futility. "Under FRCP 23.1, a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile." Arduini v. Hart, 774 F.3d 622, 628 (9th Cir. 2014). Nevada Rule of Civil Procedure 23.1 contains a similar demand futility requirement. Because courts look to the law of the state of incorporation to determine when demand would be futile, "Nevada looks to Delaware law for guidance on demand futility." Id. As "the power to manage the corporation's affairs resides in the board of directors, a shareholder must, before filing [a derivative] suit, make a demand on the board . . . to obtain the action that the shareholder desires." Id. (citation omitted). To show demand futility pursuant to Nevada law, a plaintiff "must allege 'particularized facts' demonstrating: (1) in those cases in which directors approved the challenged transactions, a reasonable doubt that the directors were disinterested or that the business judgment rule otherwise protects the challenged decisions; or (2) in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions, a reasonable doubt that the board can impartially consider a demand." Id. (citation omitted).

Plaintiff has alleged that, at the time of filing the lawsuit, the Board consisted of the following five directors: Defendants Long, Hoch, and Kirby, and non-Defendants Miguel A. Chapa and Kirk E. Taylor (both of whom were added to the Board in April 2015 after all of the alleged wrongdoing in the Complaint occurred). Plaintiff argues that Long and Hoch each received compensation that is being challenged in this lawsuit, and have a strong financial incentive to not authorize any corrective action that would force them to disgorge the improper compensation they granted themselves, and therefore are interested directors.

Defendants challenge Plaintiff's allegations regarding Defendant Kirby. Plaintiff argues that Defendant Kirby failed to implement any internal controls to ensure that executive compensation was awarded fairly. Plaintiff argues that for this reason, as well as Kirby's taking part in the December 2014 stock grant that harmed the Company and its minority shareholders, and the likelihood of liability Kirby faces, there is a reasonable doubt as to whether he could consider a litigation demand. Defendants argue that Plaintiff's assertion that Kirby did nothing to prevent others from granting themselves excessive compensation, and failed to implement any internal controls, falls short of raising reasonable doubt that Kirby is disqualified from considering a demand.

"[T]o show interestedness, a shareholder must allege that a majority of the board members would be materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." Shoen, 122 Nev. at 639 (2006) (citation omitted). "Allegations of mere threats of liability through approval of the wrongdoing or other participation . . . do not show sufficient interestedness to excuse the demand requirement." Id. at 639-40. Because a plaintiff must allege intentional misconduct, fraud, or a knowing violation of the law for directors and officers to be found personally liable for breaches of the fiduciary duty of loyalty, "interestedness through potential liability is a difficult threshold to meet." Id. at 640. Given this standard, Plaintiff's allegations that Kirby failed to implement adequate internal controls do not amount to an adequate showing for demand futility.

Plaintiff additionally alleges that Kirby received a stock grant in December 2014 that was improper in that it detracted value and voting power from minority shareholders. However,

Plaintiff does not make any specific factual allegations regarding "intentional misconduct, fraud, or a knowing violation of the law." Plaintiff has not alleged that the "business judgment rule [does not] otherwise protect" any of the decisions regarding executive compensation. A court must typically defer to an independent director's decisions regarding executive compensation and must reject the claim under the business judgment rule, unless "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration" for the compensation. In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 74 (Del. 2006). A board's decisions relating to executive compensation are "the essence of business judgment . . . ." Brehm v. Eisner, 746 A.2d 244, 263 (Del. 2000).

Thus, the Court finds, in the alternative, that Plaintiff has not adequately pled demand futility, and his derivative claims also fail on this basis.

### V. CONCLUSION

For the reasons stated in this opinion,

**IT IS ORDERED** that Defendant's Motion to Dismiss (ECF No. 52) is GRANTED. Plaintiff's unjust enrichment claim is dismissed as duplicative, and Plaintiff's remaining claims are dismissed for failure to adequately state intentional misconduct, and, alternatively, for failure to adequately plead demand futility.

DATED: October 6, 2017.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**